**DeNITTIS OSEFCHEN, P.C.**
**1515 Market Street, Suite 1200**
**Philadelphia, PA 19102**
**(215) 564-1721**
**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY A. WRIGHT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GNC HOLDINGS, INC., and GENERAL NUTRITION CORPORATION,<br><br>Defendants. | CIVIL ACTION NO. 2:15-cv-00566 (WB)<br><br>**FIRST AMENDED**<br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1.  This is a class action brought on behalf of a class of all United States citizens who purchased one or more of the following GNC store brand supplements: Gingko Biloba, St. John's Wort, Ginseng and/or Echinacea, in a GNC store located in the United States, between February 6, 2009 and the present (hereafter the "Nationwide Class").

2.  This action also seeks certification of a sub-class consisting of Pennsylvania citizens who purchased GNC store brand "Gingko Biloba" in a GNC store located in the Commonwealth of Pennsylvania, between February 6, 2009 and the present (hereafter the "Pennsylvania Sub-Class").

3.  Together, Defendants General Nutrition Corporation and GNC Holdings, Inc. (hereafter collectively "GNC") operate over 6,000 stores in the United States and claim to be the largest retailer of "health and nutrition related products" in the world.

1

4.  GNC's website brags to consumers about the accuracy of its labels, stating:

> **"When you read a GNC label, you know exactly what you're getting in that product. It's all part of our truth in labeling policy."**

5.  GNC's website goes on to assert that **"GNC sets the standard in the nutritional supplement industry by demanding truth in labeling."**

6.  Among the products defendants sell is a GNC store brand product which states on the front of the package in large letters **"Gingko Biloba."**

7.  The "Supplement Facts" label on each and every container of GNC store brand "Gingko Biloba" also states in uniform language that this product contains **"Gingko Biloba Leaf Extract."**

8.  GNC also sells a GNC store brand product which states on the front of the package in large letters **"Panax Ginseng"** and which states on the rear "Supplement Facts" label: **"Panax Ginseng Root Extract."**

9.  GNC also sells a GNC store brand product which states on the front of the package in large letters "St. John's Wort" and which states on the rear "Supplement Facts" label: **"St. John's Wort Herb Extract."**

10. GNC also sells a GNC store brand product which states on the front of the package in large letters **"Echinacea Extract"** and which states on the rear "Supplement Facts" label: **"Echinacea purpurea Root Extract."**

11. These written, uniform misstatements of fact on both the front label and each such "Supplement Facts" label of each of these products contains false material misstatements of fact.

12. In actuality, as confirmed in multiple tests recently conducted by the New York Attorney General, GNC store brand "Gingko Biloba" actually contains no Gingko Biloba whatsoever.

13. Indeed, the recent tests conducted by the New York Attorney General found that GNC store brand "Gingko Biloba" contains no plant DNA whatsoever.

14. Similarly, GNC store brand "Ginseng," contains no actual Ginseng whatsoever; GNC store brand "St. John's Wort" contains no St. John's Wort whatsoever; and GNC store brand "Echinacea" contains no Echinacea whatsoever.

15. As a result of the DNA tests conducted by the New York Attorney General, the New York Attorney General has used a "Cease and Desist" order to GNC, directing GNC to cease the sale of these four mislabeled products in the State of New York. See Attachment A, Cease and Desist letter by the New York Attorney General to GNC.

16. GNC store brand "Gingko Biloba," "St. John's Wort," "Ginseng" and "Echinacea" are each sold in GNC stores throughout the United States and each such product is identical in every respect to the product tested by the New York Attorney General, in that each bottle of each of these GNC store brand products was produced by the same manufacturer, has the exact same label and contains the exact same ingredients.

17. Despite this, no action has been taken anywhere outside the State of New York to recall this product or to withdraw these products from sale and GNC store brand "Gingko Biloba," "St. John's Wort," "Ginseng" and "Echinacea" each continue to be sold in GNC stores throughout the United States.

18. Nor have any refunds been paid or offered to purchasers of GNC store brand "Gingko Biloba," "St. John's Wort," "Ginseng" or "Echinacea" in any state, including New York.

19. Upon information and belief, GNC has been fully aware at all relevant times that:

    a.  the GNC store brand "Gingko Biloba" actually contained no Gingko Biloba;

    b.  the GNC store brand "St. John's Wort" actually contained no St. John's Wort;

3

    c.   the GNC store brand "Ginseng" actually contained no Ginseng; and

    d.   the GNC store brand "Echinacea" actually contained no Echinacea.

20. It defies belief that defendants were not aware of the contents of their own store brand products or of the fact that products which GNC chose to name after these herbs and/or roots actually contained none of the herbs or roots after which the products were named.

21. Upon information and belief, the false statements on these labels described herein originated in Pennsylvania, at the headquarters of GNC located at 300 Sixth Avenue, Pittsburgh, Pennsylvania.

22. Moreover, both the products and labels bearing the false statements described herein originated at Pittsburgh, Pennsylvania and were placed into the stream of commerce by the GNC from Pennsylvania.

23. Because of the foregoing, it is submitted that Pennsylvania law can and should be applied to the claims of all claims of both the Nationwide Class and the Pennsylvania Sub-Class.

24. Accordingly, this complaint seeks injunctive, declaratory and monetary relief for plaintiff and the proposed Nationwide Class and Pennsylvania Sub-Class, under Pennsylvania law.

## JURISDICTION AND VENUE

25. There is federal subject matter jurisdiction over this matter under the Class Action Fairness Act in that there are more than 100 proposed class members, some members of the proposed Nationwide Class and defendants are citizens of different states and the amount in controversy is more than $5 million.

26. This matter is properly venued in the Eastern District of Pennsylvania in that plaintiff

4

purchased GNC store brand "Gingko Biloba" at the GNC store located in Philadelphia,

Pennsylvania, and GNC does business, inter alia, in Philadelphia, Pennsylvania and Plaintiff

Wright resides in Philadelphia, Pennsylvania.

## THE PARTIES

27. Plaintiff Wright resides in Philadelphia, Pennsylvania.

28. Like all members of the proposed Nationwide Class, Plaintiff Wright is a United

States citizen who purchased GNC store brand "Gingko Biloba," "St. John's Wort," "Ginseng"

and/or "Echinacea" from a GNC store located in the United States between February 6, 2009 and

the present, which contained the false statement on the label described herein.

29. Like all members of the proposed Nationwide Class, Plaintiff Wright is a

Pennsylvania citizen who purchased GNC store brand "Gingko Biloba" from a GNC store

located in Pennsylvania between February 6, 2009 and the present, which stated on "Supplement

Facts" label that the product contained "Gingko biloba Leaf Extract".

30. Specifically, Plaintiff Wright purchased GNC store brand "Gingko Biloba" on

various dates between February 6, 2009 and the present at the GNC store located at 4500 City

Line Avenue, Philadelphia, Pennsylvania, each of which stated in large letters on the front label

that the product was, "Gingko Biloba" and which stated on the "Supplemental Facts" label on the

rear of the product that the product contains "Gingko biloba Leaf Extract."

31. Defendant GNC Holdings, Inc. ("GNC") is a corporation with its principle

place of business located at 300 Sixth Avenue, Pittsburgh, Pennsylvania, 15222.

32. Defendant General Nutrition Corporation is a Pennsylvania corporation with its

principal place of business located at 300 Sixth Avenue, Pittsburgh, PA 15222.

5

33. Together, Defendants GNC Holdings, Inc. and General Nutrition Corporation jointly manufactured, distributed, advertised, labeled and sold the GNC store brand products described herein to members of the proposed Nationwide Class and Pennsylvania Sub-class.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of a class defined as:

> **All United States citizens who, between February 6, 2009 and the present, purchased one or more of the GNC store brand products from a GNC store located in the United States: "Gingko Biloba," "St. John's Wort," "Ginseng" or "Echinacea"**

35. Plaintiff also brings this action as a class action pursuant to Fed.R.Civ. P. 23, on behalf of a sub-class defined as:

> **All Pennsylvania citizens who, between February 6, 2009 and the present, purchased GNC store brand "Gingko Biloba" in a GNC store located in Pennsylvania.**

36. The class and sub-class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

37. Upon information and belief, the proposed class is composed of over 50,000 persons and the proposed sub-class is composed of at least 5,000 persons.

38. Through the records relating to GNC's "rewards program," GNC's online delivery program and other records, the members of the proposed class and sub-class are ascertainable.

39. No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between any class members and defendants.

40. Rather, all claims in this matter arise from the identical, false, written affirmative statements on the product label as described herein.

6

41. There are common questions of law and fact affecting the rights of the

Pennsylvania subclass members, including, inter alia, the following:

a. **Whether GNC store brand "Ginko Biloba" actually contains any Gingko Biloba whatsoever;**

b. **Whether defendants were aware that GNC store brand "Ginko Biloba" actually contained no Gingko Biloba whatsoever;**

c. **The date defendants became aware that GNC store brand "Ginko Biloba" actually contained no Gingko Biloba whatsoever;**

d. **Whether defendants' act in placing the words "Gingko Biloba" in large letters on the front of this product was "deceptive conduct which creates a likelihood of confusion or misunderstanding" within the meaning of 73 P.S. § 201-2(4)(xxi);**

e. **Whether defendants' act in placing the words "Gingko biloba Leaf Extract" on the rear "Supplement Facts" label on the rear of this product was "deceptive conduct which creates a likelihood of confusion or misunderstanding" within the meaning of 73 P.S. § 201-2(4)(xxi);**

f. **Whether defendants' act in placing the words "Gingko Biloba" on the front and rear of this product violated Pennsylvania common law regarding express warranty; and**

g. **Whether plaintiff and the class are entitled to an order for declaratory and injunctive relief directing defendant to recall GNC store brand "Gingko Biloba" and/or to cease sale of this mislabeled product in Pennsylvania.**

42. There are common questions of law and fact affecting the rights of the

Nationwide class members, including, inter alia, the following:

a. **Whether the GNC store brands described herein actually contain the herbs or roots listed on the product label;**

b. **Whether defendants were aware that the GNC store brands described herein actually contained any of the herbs or roots listed on the product label;**

c. **The date defendants became aware that the GNC store brands described herein did not actually contain any of the herbs or roots listed on the product label;**

7

d.  Whether GNC store brand "Gingko Biloba," "Ginseng," "St. John's Wort" and "Echinacea" were manufactured, marketed and placed into the stream of commerce in Pennsylvania;

e.  Whether the false statements on these product labels originated at GNC's headquarters in Pittsburgh, Pennsylvania;

f.  Whether sufficient acts giving rise to the cause of action occurred and/or originated in Pittsburgh, Pennsylvania such that Pennsylvania law may be applied to all purchases of these products anywhere in the United States;

g.  Whether defendants' act in placing these the false statements described herein on the front and rear labels of these products was "deceptive conduct which creates a likelihood of confusion or misunderstanding" within the meaning of 73 P.S. § 201-2(4)(xxi);

h.  Whether defendants' act in placing the false statements described herein  on the front and rear of these products violated Pennsylvania common law regarding express warranty; and

i.  Whether plaintiff and the class are entitled to an order for declaratory and injunctive relief directing defendant to recall the mislabeled products and/or to cease sale of these mislabeled products.

43. Plaintiff is a member of the class and sub-class he seeks to represent.

44. The claims of plaintiff are not only typical of all class and sub-class members, they are identical.

45. All claims of plaintiff and the class and sub-class arise from the same identical, false, written statements of affirmative fact on the labels of GNC store brand products.

46. All claims of plaintiff and the class are based on the exact same legal theories.

47. Plaintiff has no interest antagonistic to, or in conflict with, the class or sub-class.

48. Plaintiff will thoroughly and adequately protect the interests of the class and sub-class, having retained qualified and competent legal counsel to represent himself and the class and sub-class.

8

49. Defendants have acted and refused to act on grounds generally applicable to the class and sub-class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

50. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

51. A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member were less than $20 per container purchased and, as such, individual actions are not economically feasible.

52. Common questions will predominate, and there will be no unusual manageability issues.

## FACTUAL ALLEGATIONS

53.  Defendants are in the business of manufacturing, distributing, marketing, and selling, inter alia, GNC store brand "Gingko Biloba," "St. John's Wort," "Ginseng" and "Echinacea."

54. These are exclusive GNC store brands, as with Defendants' other products, Defendants sell under the store motto **"GNC: QUALITY YOU CAN TRUST."**

55. GNC's website brags to consumers about its commitment to accurate labeling, telling consumers:

> **"When you read a GNC label, you know exactly what you're getting in that product. It's all part of our truth in labeling policy."**

56. GNC's website also states to customers: **"GNC sets the standard in the nutritional supplement industry by demanding truth in labeling."**

9

57. GNC store brand "Gingko Biloba," "St. John's Wort," "Ginseng" and "Echinacea" are each mass-produced products.

58. Each container of GNC store brand "Gingko Biloba," "St. John's Wort," "Ginseng" and "Echinacea" is chemically identical to every other similarly labeled container and each container contains exactly the same ingredients as every other container.

59. Since the initial offering of GNC store brand "Gingko Biloba," each and every front label on each container of this product has stated in large letters "Gingko Biloba" as depicted below:



60. Since the initial offering of GNC store brand "Gingko Biloba," each and every rear label on each container of this product has stated in "Supplement Facts" section that the product contains "Gingko biloba Leaf Extract," as depicted below:



61. Since the initial offering of GNC store brand "St. John's Wort," each and every front label on each container of this product has stated in large letters "St. John's Wort" as depicted below:



11

62. Since the initial offering of GNC store brand "St. John's Wort," each and every rear label on each container of this product has stated in "Supplement Facts" section that the product contains "St. John's Wort Herb Extract," as depicted below:



63. Since the initial offering of GNC store brand "Ginseng," each and every front label on each container of this product has stated in large letters "Panax Ginseng" as depicted below:



12

64. Since the initial offering of GNC store brand "Ginseng," each and every rear label on each container of this product has stated in "Supplement Facts" section that the product contains "Panax Ginseng Root Extract," as depicted below:



65. Since the initial offering of GNC store brand "Echinacea," each and every front label on each container of this product has stated in large letters "Echinacea Extract" as depicted below:



13

66. Since the initial offering of GNC store brand "Echinacea," each and every rear label on each container of this product has stated in "Supplement Facts" section that the product contains "Echinacea purpurea Root Extract," as depicted below:



67. On February 3, 2015, the New York Attorney General announced results of dozens of DNA tests conducted on samples of GNC store brand "Gingko Biloba," "St. John's Wort," "Ginseng" and "Echinacea" which were gathered by his office from four GNC stores.

68. Those DNA tests revealed that 100% of the samples of GNC store brand "Gingko Biloba" tested contained no Gingko Biloba whatever.

69. Indeed, those tests revealed that the GNC store brand "Gingko Biloba" contained no plant material of any kind.

70. The DNA tests conducted on GNC store brand "St. John's Wort" confirmed this product contained no "St. John's Wort" whatsoever.

71. The DNA tests conducted on GNC store brand "Ginseng" found that the product contained no "Ginseng" whatsoever.

72. The DNA tests conducted on GNC store brand "Echinacea" found that the product contained no "Echinacea" whatsoever.

14

73. On February 3, 2015, the New York Attorney General issued a "Cease and Desist" order to GNC, directing it to immediately cease selling GNC store brand "Gingko Biloba," "St. John's Wort," "Ginseng" and "Echinacea" in the State of New York. See Attachment A.

74. The chemical content and ingredients in these GNC store brands sold throughout the United States are identical in every respect to those sold in New York and the labels of all such products are also identical.

75. Despite this, GNC has not pulled these mislabeled products from the shelves of GNC stores anywhere but New York and continues to sell these mislabeled product in other states.

76. Moreover, GNC has not offered or paid refunds to purchasers of these mislabeled products in any state, including New York.

77. Defendants, as developers, manufacturers, and exclusive sellers and distributors of these GNC store brand products, have been aware since these products' inception that the products do not contain any of the herbs or roots listed on their labels.

78. It was defendants' conscious intent to induce consumers to purchase these GNC store brands by falsely stating that these products actually contained the herbs and roots listed on these labels.

**COUNT I**

**DECLARATORY RELIEF UNDER 28 U.S.C. §2201**

79. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

80. Plaintiff and the class need, and are entitled to, a declaration that:

    a.  GNC store brand "Gingko Biloba" contains no Gingko Biloba whatsoever;

    b.  GNC store brand "St. John's Wort" contains no St. John's Wort whatsoever;

    c.   GNC store brand "Ginseng" contains no Ginseng whatsoever; and

    d.   GNC store brand "Echinacea" contains no Echinacea whatsoever.

81. Each plaintiff and class member has a significant interest in this matter.

82. A justifiable controversy was presented in this case, rendering declaratory judgment appropriate.

83. In addition, because the unlawful uniform conduct of GNC continues, and is on-going, the class also needs, and is entitled to, an order enjoining defendants from continuing to sell the GNC store brands at issue with the current erroneous labels in the United States.

## COUNT II

### Pennsylvania Unfair Trade Practices and Consumer Protection Law
### 73 P.S. § 201-2(4)(xxi)

84. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

85. This action does not raise any claims of common law fraud.

86. Rather, all claims in this claim arise exclusively under the UTPCPL.

87. **"The purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices."** Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 646 (Pa.Super.1999).

88. It is well-established that, in order to carry out that purpose, the UTPCPL must be liberally construed. See Chiles v. Ameriquest Mortg. Co., 551 F.Supp.2d 393, 398 (E.D.Pa.2008) (**"The UTPCPL must be construed liberally."**); Pirozzi v. Penske Olds-Cadillac-GMC, Inc., 413 Pa.Super. 308, 605 A.2d 373, 376, appeal denied, 532 Pa. 665, 616 A.2d 985 (1992) (**"our**

16

**supreme court held that the UTPCPL is to be liberally construed in order to effect its purpose.")**

89. In order to prevail under the UTPCPL, a plaintiff must prove the transaction between **plaintiff and** defendant constituted "trade or commerce" within the meaning of the UTPCPL and that the defendant was engaged in unfair or deceptive acts or practices.

90. The conduct alleged herein took place during "trade and commerce" within the meaning of the UTPCPL.

91. The conduct alleged herein constitutes a deceptive practice.

92. The UTPCPL 73 P.S. § 201-2(4)(xxi) defines unfair or deceptive acts or practices, inter alia, as any: **"deceptive conduct which creates a likelihood of confusion or misunderstanding."**

93. Prior to 1996, 73 P.S. § 201-2(4)(xxi) required that a defendant engage in the equivalent of common law fraud. See Flores v. Shapiro & Kreisman, 246 F.Supp.2d 427, 432 (E.D.Pa.2002); Commonwealth of Pa. v. Percudani, 825 A.2d 743, 746-47 (Pa.Commw.2003).

94. In 1996, however, UTPCPL 73 P.S. § 201-2(4)(xxi) was amended to add the word "deceptive" as an alternative to "fraud" in describing the practices prohibited by this section. Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145 (Pa.Super.2012) (holding that the amendment to the catch-all provision that added the language "or deceptive conduct" changed the requirement from proving actual fraud to merely proving deceptive conduct); Commonwealth of Pa. v. Percudani, 825 A.2d 743, 746-47 (Pa.Commw.2003) (a plaintiff who alleges deceptive conduct to proceed without proving all of the elements of common law fraud); Flores v. Shapiro & Kreisman, 246 F.Supp.2d 427, 432 (E.D.Pa.2002):

**"by adding a prohibition on 'deceptive' conduct, the 1996 amendment to the CPL eliminated the need to plead all of the elements of common law fraud in actions under the CPL. Under general principles of statutory interpretation, no word should be rendered redundant. The new word "deceptive" in the statute, therefore, must have been intended to cover conduct other than fraud."**

95. As alleged herein, defendants have engaged in deceptive conduct which originated at GNC's corporate headquarters in Pennsylvania and created a likelihood of confusion or misunderstanding.

96. Such conduct was based on both affirmative misrepresentations, material nondisclosures and material omissions.

97. In the case at bar, defendants' act in placing the words "Gingko Biloba" in large letters on the front of GNC store brand "Gingko Biloba" was **"deceptive conduct which creates a likelihood of confusion or misunderstanding"** within the meaning of 73 P.S. § 201-2(4)(xxi).

98. Defendants' act in placing the words **"Gingko biloba Leaf Extract"** in the "Supplement Facts" section on the rear label of their GNC store brand "Gingko Biloba" was **"deceptive conduct which creates a likelihood of confusion or misunderstanding"** within the meaning of 73 P.S. § 201-2(4)(xxi).

99. In reality, this product contained no Gingko Biloba at all.

100. In the case at bar, defendants' act in placing the words **"St. John's Wort"** in large letters on the front of its GNC store brand "St. John's Wort" product was **"deceptive conduct which creates a likelihood of confusion or misunderstanding"** within the meaning of 73 P.S. § 201-2(4)(xxi).

101. Defendants' act in placing the words **"St. John's Wort Herb Extract"** in the

18

"Supplement Facts" section on the rear label of their GNC store brand "St. John's Wort" product was **"deceptive conduct which creates a likelihood of confusion or misunderstanding"** within the meaning of 73 P.S. § 201-2(4)(xxi).

102.  In reality, this product contains no St. John's Wort at all.

103.  In the case at bar, defendants' act in placing the words **"Panax Ginseng"** in large letters on the front of its GNC store brand "Ginseng" product was **"deceptive conduct which creates a likelihood of confusion or misunderstanding"** within the meaning of 73 P.S. § 201-2(4)(xxi).

104.  Defendants' act in placing the words **"Panax Ginseng Root Extract"** in the "Supplement Facts" section on the rear label of their GNC store brand "Ginseng" product was **"deceptive conduct which creates a likelihood of confusion or misunderstanding"** within the meaning of 73 P.S. § 201-2(4)(xxi).

105.  In reality, this product contains no Ginseng at all.

106.  In the case at bar, defendants' act in placing the words **"Echinacea Extract"** in large letters on the front of its GNC store brand "Echinacea" product was "deceptive conduct which creates a likelihood of confusion or misunderstanding" within the meaning of 73 P.S. § 201-2(4)(xxi).

107.  Defendants' act in placing the words **"Echinacea purpurea Root Extract"** in the "Supplement Facts" section on the rear label of their GNC store brand "Echinacea" product was "deceptive conduct which creates a likelihood of confusion or misunderstanding" within the meaning of 73 P.S. § 201-2(4)(xxi).

108.  In reality, this product contains no Echinacea at all.

109.  Numerous cases have held that, after 1996, 73 P.S. § 201-2(4)(xxi) does not require actual fraud. See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145 (Pa.Super.2012) (holding that the amendment to the catch-all provision that added the language "or deceptive conduct" changed the requirement from proving actual fraud to merely proving deceptive conduct); Flores v. Shapiro & Kreisman, 246 F.Supp.2d 427, 432 (E.D.Pa.2002); Commonwealth of Pa. v. Percudani, 825 A.2d 743, 746-47 (Pa.Commw.2003); Rubenstein v. Dovenmuehle Mortg., Inc., 2009 WL 3467769 (E.D.Pa.2009) at *6.

110.  By the acts alleged herein, defendants made misrepresentations of a material fact in the sale of a product and also omitted material facts, including the fact that:

    a.   the product named "Gingko Biloba" by defendants did not actually contain any Gingko Biloba;

    b.   the product named "St. John's Wort" by defendants did not actually contain any St. John's Wort;

    c.   the product named "Ginseng" by defendants did not actually contain any Ginseng; and

    d.   the product named "Echinacea" by defendants did not actually contain any Echinacea.

111.  Defendants acted with knowledge that their conduct was deceptive and with intent that such conduct deceive consumers.

112.  While it is not clear that actual reliance is required, plaintiff and the class did justifiably rely upon the misrepresentation and material nondisclosure; a reliance which may be presumed in this case where a defendant has engaged in a common course of identical conduct.

113.  Here, the products were specifically named after specific herbs and roots by defendants. It is reasonable to assume that any person purchasing a product named after a specific herb or root would expect the product to actually contain at least some of that herb or

20

root, particularly when that herb or root was listed as an ingredient on the "Supplement Facts" label.

114. In addition, GNC's conduct violated 73 P.S. § 201-2(4) (vii) by **"representing that goods... are of a particular standard, quality or grade... if they are of another".**

115. As a proximate result of this conduct, plaintiff and the class have suffered an ascertainable loss of money.

## COUNT III

### PENNSYLVANIA BREACH OF EXPRESS AND/OR IMPLIED WARRANTY

116. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

117. By operation of Pennsylvania law, the label on GNC's store brands constituted an express or implied warranty that these products met the description by defendants of the contents of the products in question.

118. Because those descriptions, labels and warranties were created in Pittsburgh Pennsylvania, Pennsylvania law applies regardless of where in the United States the product was actually purchased by an end user.

119. The relevant terms and language of that warranty between defendants and each member of the class are identical.

120. Defendants breached the terms of this warranty in an identical manner for each class member because the product did not and could not conform to the affirmation, promise and description on this label.

121. As a direct and proximate result of this breach of express warranty by defendants, plaintiff and each member of the class has suffered economic loss.

21

## PRAYER FOR RELIEF

WHEREFORE, plaintiff asks this court to:

        a. Certify the proposed class as a class action pursuant to Fed.R.Civ.P. 23;

        b. Enter an order for injunctive and declaratory relief as described herein;

        c. Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

        d. Award plaintiff reasonable attorneys' fees and costs; and

        e. Grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

                             **DeNITTIS OSEFCHEN, P.C.**

                      By:    */s/Stephen P. DeNittis*
                               STEPHEN P. DeNITTIS (SD-0016)
                               SHANE PRINCE (SP-0947)
                               1515 Market Street
                               Suite 1200
                               Philadelphia, PA 19102
                               (215) 564-1721

Dated: February 10, 2015

# Exhibit A



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ERIC T. SCHNEIDERMAN
Attorney General

DIVISION OF REGIONAL AFFAIRS

February 2, 2015

Michael G. Archbold, CEO
GNC Holdings, Inc.
300 Sixth Avenue
Pittsburgh, Pennsylvania  15222

*Certified—Return Receipt Requested*

Re:  *C E A S E   &   D E S I S T   N O T I F I C A T I O N*
      *Herbal Plus—GNC Distributed Herbal Dietary Supplements*

Dear Mr. Archbold:

**This letter constitutes a demand to cease and desist engaging in the sale of adulterated and/or mislabeled herbal dietary supplements, and in particular to immediately stop the sale of five "Herbal Plus" dietary supplements as identified by lot number in the exhibit annexed hereto.**

Be advised that the Attorney General is authorized by Executive Law § 63(12) to investigate allegations and prosecute businesses which perpetuate fraud upon consumers or engage in illegality in their business practices. General Business Article 22-b further authorizes this office to redress deceptive business acts and practices and false advertising. Of late, the topic of purity (or lack thereof) in popular herbal dietary supplements has raised serious public health and safety concerns,[1] and also caused this office to take steps to independently assess the validity of industry representations and advertising.

In an investigation recently conducted by the Attorney General's Office, six popular GNC "Herbal Plus" brand dietary supplement products were purchased at four different New York State locations and were then genetically tested five times per sample, yielding 120 results. The supplements tested included Gingko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto. By using established DNA barcoding technology, analytic testing disclosed that 5 out of 6 types of dietary supplement products tested were either unrecognizable or a substance other than what they claimed to be, and therefore constitute contaminated or substituted products. Twenty-two (22) percent of the tests yielded DNA matching the product label; 33% tested for botanical material other than what was on the label; and 45% yielded no plant DNA at all.

---

[1] *See, e.g.,* Newmaster, et al., "DNA Barcoding Detects Contamination and Substitution in North American Herbal Products," *BMC Medicine,* 2013, 11:222 (http://www.biomedcentral.com/1741-7015/11/222).

101 EAST POST ROAD, WHITE PLAINS, NY 10601 ● PHONE (914) 422-8755 ● FAX (914) 422-8706 ● WWW.AG.NY.GOV

Contamination, substitution and falsely labeling herbal products constitute deceptive business practices and, more importantly, present considerable health risks for consumers. The Attorney General's testing upon the products purchased revealed the following:

**Gingko Biloba.** Negative. No gingko biloba DNA was identified. The only DNA identified was allium (x5), "oryza"(x4)(commonly known as rice), spruce, and asparagaceae. Nine of the tests revealed no plant DNA whatsoever.

**St. John's Wort.** Negative. No St. John's Wort DNA was identified. Of the 20-tests performed, only three identified any DNA, and it included allium, oryza, and dracaena (tropical houseplant).

**Ginseng:** Negative. No ginseng DNA was identified. The testing yielded identification of oryza, dracaena, pinus strobus, wheat/grass, and citrus spp., with 15 of the tests identifying no genetic material at all.

**Garlic:** Positive. All 20 tests yielded DNA from allium.

**Echinacea:** Negative. Five tests identified oryza DNA, one other yielded the DNA of pinus or ranunculnae. Fourteen tests detected no plant DNA of any sort in the product labeled Echinacea.

**Saw Palmetto:** Qualified negative. Only 6 of 20 tests did identify the presence of saw palmetto, but the positive results were principally from one sample. The results did not replicate in the three other samples. One sample demonstrated no plant DNA, another revealed the presence of asparagaceae, and oryza, while a fourth was positive for DNA from the primrose family as well as saw palmetto.

Studies conducted by the Centre for Biodiversity Genomics at the University of Guelph and others have previously alerted the dietary supplement industry to the fact that it is not providing the public with authentic products without substitution, contamination or fillers. It is disappointing that over a year later the Attorney General's researcher reached similar conclusions, demonstrating that the industry has failed to clean up its practices.

To assist in the Attorney General's ongoing investigation of this matter, and pursuant to the above authority, please supply the following information as it pertains to the identified lot numbers, as well as for all companies presently producing these product lines:

1. The name of the manufacturer and the location of the production of each of the herbal products identified.

2. A listing of any DNA testing or any other analytic testing for content and quality (including but not limited to chemical composition) of the herbal products listed above and copies of such testing results.

3. Copies of all licensing and production contracts with any party involved in the production and distribution of the herbal products identified above.

4. A listing of all ingredients used in the products identified above and a measurement of the amount of each ingredient in each of the herbal products identified above.

5.  Identify the standards or procedures followed to authenticate the content of the herbal products listed above.

6.  Produce the relevant Bioterrorism Registration documentation for the manufacturer of the dietary supplements.

7.  Articulate the acquisition, production protocol, and quality assurance measures undertaken by the manufacturer of the products tested, including all such protocols undertaken to comply with current Dietary Supplement Current Good Manufacturing Practices (CGMPs) for quality control.

8.  Produce any and all serious adverse event reports associated with use of any GNC herbal dietary supplement in the United States

Please provide the requested information to me at the following address: NYS Attorney General's Office, Dulles State Office Building, 317 Washington Street, Watertown, New York 13601. Kindly respond on or before 5:00 P.M. on February 9, 2015. If you have any questions, you may contact Assistant Attorney General Deanna R. Nelson at 315-785-2444.

The foregoing shall not constitute a waiver of or limitation on the Attorney General's authority to issue subpoenas or take enforcement action pursuant to applicable law.

Thank you for your anticipated cooperation.

Very truly yours,

**MARTIN J. MACK**
Executive Deputy Attorney General
In Charge of Regional Affairs

Enc.

**Supplements by Lot #:** As a courtesy, store location for the tested supplement is also listed. Kindly remove all of the supplements identified below which may bear the lot number indicated no matter the store location.

| OAG # | Product | Address | Lot # |
|---|---|---|---|
| Bi-G-1 | Gingko Biloba | GNC # 00369, 3111 E. Main Street, Johnson City, NY 13790 | 4783GM1834 |
| Bi-G-2 | St. John's Wort | GNC # 00369, 3111 E. Main Street, Johnson City, NY 13790 | 6736JN1945 |
| Bi-G-3 | Ginseng | GNC # 00369, 3111 E. Main Street, Johnson City, NY 13790 | 8173LN3748 |
| Bi-G-5 | Echinacea | GNC # 00369, 3111 E. Main Street, Johnson City, NY 13790 | 8273LN1987 |
| Bi-G-6 | Saw Palmetto | GNC # 00369, 3111 E. Main Street, Johnson City, NY 13790 | 2660DN3972 |
| Su-G-1 | Gingko Biloba | GNC # 05057, 899 Montauk Highway, Bayport, NY 11705 | 0624AN1834 |
| Su-G-2 | St. John's Wort | GNC # 05057, 899 Montauk Highway, Bayport, NY 11705 | 0822BN1945 |
| Su-G-3 | Ginseng | GNC # 05057, 899 Montauk Highway, Bayport, NY 11705 | 1376BN3748 |
| Su-G-5 | Echinacea | GNC # 05057, 899 Montauk Highway, Bayport, NY 11705 | 1985CO1987 |
| Su-G-6 | Saw Palmetto | GNC # 05057, 899 Montauk Highway, Bayport, NY 11705 | 2617DO3972 |
| H-G-1 | Gingko Biloba | GNC # 09903, 121 West 125th Street, New York, NY 10027 | 2447DO1947 |
| H-G-2 | St. John's Wort | GNC # 09903, 121 West 125th Street, New York, NY 10027 | 1930DO1945 |
| H-G-3 | Ginseng | GNC # 09903, 121 West 125th Street, New York, NY 10027 | 2096DO3747 |
| H-G-5 | Echinacea | GNC # 09903, 121 West 125th Street, New York, NY 10027 | 1247BO1941 |
| Pl-G-1 | Gingko Biloba | GNC # 06698, 114 Consumer Square, Plattsburgh, NY 12901 | 2447DO1947 |
| Pl-G-2 | St. John's Wort | GNC # 06698, 114 Consumer Square, Plattsburgh, NY 12901 | 1930DO1945 |
| Pl-G-3 | Ginseng | GNC # 06698, 114 Consumer Square, Plattsburgh, NY 12901 | 2096DO3747 |
| Pl-G-5 | Echinacea | GNC # 06698, 114 Consumer Square, Plattsburgh, NY 12901 | 1985CO1987 |
| Pl-G-6 | Saw Palmetto | GNC # 06698, 114 Consumer Square, Plattsburgh, NY 12901 | 0255AO3972 |

615 Erie Boulevard West, Suite 100, Syracuse, NY 13204 ● Phone (315) 448-4800 ● Fax (315) 448-4853 ● www.ag.ny.gov